IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

PAULA R. STEPHENS                                                                    PLAINTIFF

v.                          Civil No. 07-2080

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Paula Stephens, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claims for period of disability, disability insurance benefits (DIB) pursuant to Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.     **Procedural Background**

Plaintiff filed her application for DIB on October 6, 2005, alleging an onset date of June 11, 1996, due to asthma and chronic obstructive pulmonary disease. (Tr. 45-50, 62-71, 189). An administrative hearing was held on February 5, 2007. (Tr. 187-210). Plaintiff was present and represented by counsel. (Tr. 187-210).

At the time of the administrative hearing, plaintiff was 59 years old and possessed the equivalent of a high school education. (Tr. 192). The record reveals that she had past relevant work experience ("PRW") as a school secretary/registrar. (Tr. 74, 191).

On March 28, 2007, the Administrative Law Judge ("ALJ") issued a written opinion finding that plaintiff suffered from a combination of severe impairments on or before her date

late insured, but that these impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 15). In spite of her impairments, he concluded that she retained the RFC to perform light work with normal breaks. (Tr. 16). With the assistance of a vocational expert, the ALJ then concluded that plaintiff could return to her PRW as a school secretary/registrar. (Tr. 19).

Plaintiff appealed this decision to the Appeals Council, but her request for review was denied on July 3, 2007. (Tr. 3-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. The defendant has filed an appeal brief, but the plaintiff failed to do so.[1] (Doc. #9). This case is now ready for decision.

## II. **Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the

---

[1] We note that plaintiff's counsel has failed to file an appeal brief, in violation of a court order directing him to do so. Counsel is reminded that appeal briefs are now mandatory and that failure to file a brief could result in dismissal of the lawsuit.

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

### A. The Evaluation Process

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing PRW; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her RFC. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

AO72A
(Rev. 8/82)

**III.     Evidence Presented:**

On February 24, 1995, plaintiff complained of a cough, congestion, hoarseness, and shortness of breath. (Tr. 122). Dr. Robert Williams noted that plaintiff had a perforation of the tympanic membrane, which was an old problem, and a scratchy, squeaky voice consistent with laryngitis. However, no other abnormalities were noted. Plaintiff's lungs were "quiet." Dr. Williams diagnosed plaintiff with an upper respiratory infection with bronchitis and laryngitis. He prescribed Lorabid and Endal. (Tr. 122).

On June 17, 1996, Dr. Williams prescribed hearing aides for plaintiff. (Tr. 121). Her diagnosis was a hearing impairment. (Tr. 121).

On December 13, 1999, plaintiff complained of dysuria. (Tr. 147). Lab tests revealed acute cystitis, and plaintiff was prescribed Bactrim DS and Pyridium. (Tr. 147).

On January 31, 2000, plaintiff reported experiencing fatigue, mood swings, and shortness of breath with exertion. (Tr. 142). Records indicate that plaintiff had smoked for 22 years, but stopped approximately 6 years prior. Plaintiff's mother had passed away 8 months prior and her father was quite ill with emphysema. An examination revealed clear lungs with a regular heart rate and rhythm. Dr. Judy Trent diagnosed plaintiff with fatigue, difficulty breathing, and probable menopause. She ordered laboratory testing and a chest x-ray, which revealed some evidence of emphysema/chronic obstructive pulmonary disease. (Tr. 142-143). Dr. Trent prescribed an Albuterol Inhaler for plaintiff's shortness of breath, and recommended that she use it before exercising. (Tr. 142).

On February 28, 2000, plaintiff reported feeling "dramatically" better. (Tr. 137). She was using her Albuterol inhaler four times per day with improvement. Plaintiff was feeling

better and the mood swings she had been experiencing had resolved. An examination revealed a regular heart rate and rhythm with clear lungs. Dr. Trent diagnosed plaintiff with emphysema and asthma, improved with the use of Albuterol. However, she indicated that plaintiff's asthma was probably not under good control due to her usage rate of Albuterol. Therefore, Dr. Trent prescribed Azmacort. (Tr. 137).

On April 10, 2000, plaintiff complained of a cough, sore throat, and congestion. (Tr. 136). She also reported a burning sensation in her chest and sinuses. Plaintiff indicated that she was very pleased with the results she was getting from the Azmacort inhaler. She stated that she had been able to reduce her Albuterol use to no more than a couple of times per week on an as needed basis. Plaintiff reported continued use of the Albuterol preventatively before participating in activity, but indicated that she had dramatically improved. She also stated that she was going to New Mexico to stay for several months. Although plaintiff seemed a little short of breath, an examination revealed clear lungs. Dr. Trent diagnosed plaintiff with Sinusitis and prescribed a Z-Pack, Tussionex, and Claritin. She also gave plaintiff refills of her asthma inhalers. (Tr. 136).

On December 20, 2000, plaintiff indicated that her asthma had been very well controlled. (Tr. 135). She stated that the Albuterol worked great, and that she was using it twice daily. Dr. Trent diagnosed plaintiff with allergic rhinitis and well controlled asthma. She prescribed Claritin, Azmacort, and Albuterol. (Tr. 135).

On June 6, 2001, plaintiff was very pleased with her asthma control. (Tr. 133). She indicated that she was only using her Azmacort inhaler twice daily and rarely needed her Albuterol. Plaintiff stated that she did use her Albuterol inhaler preventatively, in the mornings

and before exertional activities. An examination revealed clear lungs. Plaintiff was diagnosed with asthma and a history of rhinitis. Dr. Trent provided her with refills of Claritin, Azmacort, and Albuterol. (Tr. 133).

On June 15, 2001, plaintiff underwent a Dexascan. (Tr. 132). On June 19, 2001, Dr. Trent wrote a letter to plaintiff advising her of her Dexascan results. (Tr. 130). She stated that plaintiff's results revealed osteopenia of the hip and lumbar spine, which was early evidence of bone loss and could lead to osteoporosis, if not treated. Although she noted plaintiff's prior unwillingness to take Estrogen, Dr. Trent recommended that plaintiff consider selective Estrogen, like Evista, or one of the new drugs that builds bone, like Fosamax or Actonel. (Tr. 130).

## IV. Discussion

### A. DIB

At the onset, we note that this is a DIB case. As such, the plaintiff has the burden of proving that a disabling condition existed before her insured status expired. *See Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998). Plaintiff was last insured for DIB as of December 31, 2001. (Tr. 15). Thus, the relevant time period in this case is from June 11, 1996, her alleged onset date, through December 31, 2001, the date she was last insured for DIB.

### B. Subjective Complaints

We next address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage,

effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

During the relevant time period, plaintiff was diagnosed with asthma and treated via the use of Azmacort and Albuterol inhalers. Records indicate that plaintiff's asthma responded well to these medications. In February 2000, plaintiff indicated that she felt "dramatically better" and that the Albuterol had really helped. When Azmacort was added later that year, plaintiff stated that she was "very pleased with the Azmacort inhaler." By December 2000, Dr. Trent even noted that plaintiff's asthma was well controlled. Then, in June 2001, plaintiff said she was very pleased with her asthma control. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of disability). As such, it is clear that this condition was not as disabling as alleged during the relevant time period.

7

Plaintiff was also diagnosed with sinusitis and allergic rhinitis during the relevant time period. The evidence indicates that this condition was treated via prescriptions for Claritin and Singulair. *See id*. As we can find no evidence to show that plaintiff's allergy/sinus problems interfered with her ability to perform work-related activities, we cannot say that the ALJ erred in his determination that this impairment did not meet or medically equal one of the listings.

The records also indicate that plaintiff was diagnosed with osteopenia. However, there is no evidence to show that plaintiff voiced complaints of pain or weakness related to this condition. Further, plaintiff was not prescribed any pain medication to treat this condition. *Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain). Therefore, we agree with the ALJ's determination that this condition, even when considered in combination with plaintiff's asthma and allergic rhinitis, was not disabling.

Further, in spite of plaintiff's diagnoses, there is no evidence to indicate that plaintiff's treating doctors placed any limitations on plaintiff's activities during the relevant time period. *See Baldwin v. Barnhart*, 349 F.3d 549, 557 (8th Cir. 2003) (physicians noted few abnormalities, and none of plaintiff's independent physicians restricted or limited plaintiff's activities). Had plaintiff's condition been as serious as alleged, it is reasonable to conclude that her physicians would have placed limitations on plaintiff's ability to perform exertional, as well as non-exertional activities.

Plaintiff's own reports concerning her activities of daily living also contradict her claim of disability. In her disability application, plaintiff represented that she could care for her personal hygiene, prepare simple meals, do laundry, wash dishes, clean, dust, go shopping for

groceries and clothes, drive, pay bills, count change, handle a savings account, use a checkbook/money orders, watch television, attend church, sew, read, paint with water colors, listen to music, talk on the phone, and use a computer. (Tr. 66-68). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, this level of activity is inconsistent with a finding of disability.

Therefore, although it is clear that plaintiff suffers from some degree of pain and discomfort, she has not established that she was unable to engage in any and all gainful activity during the relevant time period. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning her daily activities supports plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

9

### C. RFC Assessment

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to perform a full range of light work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, plaintiff's subjective complaints, and her medical records. On November 22, 2005, Dr. Robert Redd, a non-examining, consultative doctor, completed an RFC assessment. (Tr. 166-175). After reviewing plaintiff's medical records during the relevant time period, he determined that plaintiff could lift 10 pounds frequently; 20 pounds occasionally; and, sit, stand, and walk for about 6 hours per day. No other limitations were noted. (Tr. 166-175).

10

As the evidence indicates that plaintiff's asthma and allergic rhinitis/sinusitis have responded well to medication and there have been no exertional or non-exertional limitations imposed by plaintiff's treating doctors, we find substantial evidence to support the ALJ's RFC determination. Although plaintiff testified that she was unable to perform light work and indicated that she quit work due to her illness, we can find no evidence to show that plaintiff's condition was as severe as alleged on or before her date last insured.[2]

### D. Return to Work

We also find that substantial evidence supports the ALJ's finding that plaintiff can return to her PRW as a school secretary/registrar. When presented with the ALJ's hypothetical question involving a claimant of the same age, educational and vocational background as plaintiff, who could lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk about 6 hours out of normal 8 hour workday with normal breaks; sit with normal breaks for a total of 6 hours during an 8-hour workday; and, push and/or pull within those same limits, the vocational expert ("VE") testified that the individual would be able to return to plaintiff's PRW as a school secretary/registrar. The VE stated that a person with those abilities could perform plaintiff's PRW as plaintiff had previously performed the job and as that position is generally performed in the national economy. (Tr. 207-209). *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Given the fact that there is no evidence, aside from plaintiff's testimony, to suggest that she was incapable of performing this level of

---

[2]We note, however, as the ALJ does, that the evidence does indicate that plaintiff's condition worsened in 2004.

11

work on or before her date last insured, we find substantial evidence to support the ALJ's determination.

## V.     Conclusion

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 13th day of May 2008.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE